DAYLE ELIESON
United States Attorney
District of Nevada
SUSAN CUSHMAN
Assistant United States Attorney
501 Las Vegas Boulevard South
Suite 1100
Las Vegas, Nevada  89101
702-388-6336

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:17-cr-0064-KJD-GWF |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| vs. | |
| JACK WILLIAM MORGAN, | |
| Defendant. | |

COMES NOW, the United States of America, by and through its attorneys, DAYLE ELIESON, United States Attorney for the District of Nevada, and Susan Cushman, Assistant United States Attorney, and hereby submits its sentencing memorandum.  Pursuant to LCR 12-1, undersigned counsel hereby certifies that its memorandum is timely filed.

**FACTUAL AND PROCEDURAL HISTORY**

On January 30, 2017, Jack William Morgan dragged JJP from her residence on South Decatur Boulevard, Las Vegas Nevada.  Co-defendant Samuel Brown was waiting for them in a van outside the residence.  Morgan forced JPP into the van where she was chained to the rear floor-board.  Morgan and Brown then drove to Espanola, New Mexico.  New Mexico State Police and the Espanola Police Department located and stopped the van.  Morgan was driving the van, Brown was seated in the front passenger seat, and JPP was chained in the back

of the van. JPP suffered numerous lacerations and contusions as a result of Morgan's physical violence to her. She also suffered and continues to suffer emotional trauma.

On February 1, 2017, a sealed complaint and arrest warrants were issued in the District of Nevada charging MORGAN and Brown with Kidnapping in violation of 18 U.S.C. § 1201(a)(1)(c). (Doc. #1). Both defendants were arrested in New Mexico and transported to Nevada. On February 10, 2017, Morgan made his initial appearance in the District of Nevada where he was ordered detained after a detention hearing. (Doc. # 9). On February 22, 2017, a federal grand jury in Las Vegas, Nevada returned a two-count indictment charging Morgan and Brown with Conspiracy to Commit Kidnapping in violation of 18 U.S.C. § 1201(c) and Kidnapping in violation of 18 U.S.C. § 1201(a)(1) . (ECF # 24). Morgan faces a maximum term of imprisonment of life since he is charged with a completed kidnaping pursuant to 18 U.S.C. § 1201(c).

On November 21, 2017, co-defendant Brown pleaded guilty to Count 1 of the Indictment pursuant to a written plea agreement. (ECF # 79). Morgan proceeded to trial on December 18, 2017. (ECF #102). On December 19, 2017, the jury found Morgan guilty of Counts 1 and 2. (ECF # 106). On February 21, 2018, Brown was sentenced to 63 months consistent with the plea agreement. (ECF # 111). Morgan is scheduled to be sentenced on March 20, 2018.

**GUIDELINE CALCULATIONS**

Because Morgan went to trial, there is no plea agreement in this case. In its Pre-Sentence Report (PSR), U.S. Probation correctly calculated the base offense level at 35 (PSR ¶ 33). Morgan has not shown any acceptance of responsibility. (PSR ¶ 40). Therefore, the total offense level is 35. (PSR ¶ 41).

…

The PSR calculates Morgan's advisory guideline range as 168-188 months followed by 2 to 5 years of supervised release concurrent per count. (PSR p. 21) There is $200 special assessment and restitution to be determined. (Id.) However, U.S Probation has recommended an 8-level upward departure for a sentence of life imprisonment based on the following: USSG § 5K2.2 Physical Injury; USSG § 5K2.3 Extreme Psychological Injury; USSG § 5K2.4 Abduction or Unlawful Restraint; USSG § 5K2.6 Weapons or Dangerous Instruments; and USSG § 5K2.8 Extreme Conduct. (PSR at ¶¶ 79-80). The United States agrees with the recommended sentence of life imprisonment.

## LEGAL ANALYSIS

**i) USSG §5K2.2. Physical Injury**: The Ninth Circuit says that to justify a departure under § 5K2.2 the injury to the victim must be significant, i.e., the injury "should be something more than the ordinary scratches, scrapes, and bruises that a person would suffer in any minor scuffle." *United States v. Singleton,* 917 F.2d 411 (9th Cir. 1990). Here, the evidence at trial showed that JJP suffered much "more than the ordinary scratches, scrapes, and bruises" associated with a minor scuffle. Morgan forcibly took JJP from her apartment. In doing so he dragged her down the stairs which caused bruising to her body and scratches to her face. Morgan choked JJP unconscious on six separate occasions as he dragged her to the waiting van. As a result of being choked, blood vessels ruptured in JJP's eyes. Her nose and throat bled for 24 hours after the incident. Follow up medical treatment was required to treat her throat for difficulty in swallowing. Morgan handcuffed JJP's wrists and ankles and then chained her to the floorboard of the van that he was driving. JJP was handcuffed for approximately 12 hours, which caused a permanent scar to her left ankle and caused her to lose feeling in her left thumb for several months.

…

…

3

**ii) USSG § 5K2.3. Extreme Psychological Injury**: If a victim suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended. Here JJP's psychological injury is directly related to the counts of conviction. *See United States v. Fine,* 975 F.2d 596 (9th Cir. 1994) (The grounds for departure must be limited to the count of conviction). As a result of being forcibly taken from her home and chained up in the back of a van for 12 hours, JJP suffers from a lingering sense of paranoia and fear; difficultly focusing on and accomplishing tasks; panic and anxiety whenever someone knocks at her door; difficulty sleeping; and fear of leaving her house. (PSR at ¶ 28).

**iii) USSG § 5K2.4**. Abduction and Unlawful Restraint: If a person was abducted, taken hostage, or unlawfully restrained to facilitate the commission of the offense, the court may increase the sentence above the authorized guideline range. *See United States v. Barragan-Espinoza,* 350 F. 3d 978 (9th Cir, 2003) (defendant was convicted of conspiracy to distribute a controlled substance. Defendant abducted a woman, held her in a motel room and coerced her into selling and transporting drugs). § 5K2.4 does not apply since the kidnapping is its own offense and not used to facilitate the commission of another offense.

**iv) USSG § 5K2.6**. Weapons and Dangerous Instrumentalities: If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily depends on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The evidence at trial showed that Morgan possessed a stun gun and a rifle. Morgan used the stun gun on JJP when he forced his way into her apartment. The stun gun malfunctioned so a physical struggle between JJP and Morgan ensued as Morgan tried to abduct

her. A rifle, scope, and numerous rounds of ammunition were recovered from inside the cave where he was planning to take JJP. The Ninth Circuit upheld a departure based on weapons or dangerous instrumentalities where the defendant possessed a "cache of weapons." *See United States v. Nakagawa*, 924 F.2d 800 (9th Cir. 1991) (departure upheld even though possession of weapons during drug offense was already considered by the guidelines).

**v) USSG § 5K2.8: Extreme Conduct**: If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. The evidence at trial showed that Morgan spent over one year planning to kidnap JJP. His preparations included digging out a cave in the side of a remote hill in Espanola, New Mexico. Morgan installed an eye-bolt and chain inside the cave which he planned to use to prevent JJP from escaping. Morgan recruited co-defendant Brown to help with the commission of the offense. Morgan and Brown drove to Las Vegas from Espanola. They did not know where JJP lived so Morgan met with JJP in a coffee shop while Brown hid in the back of the van. Morgan and Brown followed JJP to her apartment complex. Brown went door-to-door in the apartment complex pretending to collect donations for a church until he found JJP leaving her apartment. Morgan and Brown also purchased a stun gun in anticipation of the kidnapping. Morgan bound and gagged JJP then forced her into the back of van where she was chained around the neck, waist and ankles. The chain was attached to an eye-bolt in the floor board of the van where JJP remained for approximately 12 hours while Morgan and Brown dove from Las Vegas to Espanola. Morgan kept his cell phone turned off for most of the trip so that law enforcement could not track him.

The Ninth Circuit upheld an extreme conduct departure where a defendant during the course of a drug conspiracy abducted a woman and held her in a motel room for 5 days, repeatedly sexually assaulting her. *See United States v. Barragan-Espinoza*, 350 F.3d 978 (9th Cir, 2003).

5

Other examples of extreme conduct departures upheld by Ninth Circuit include defendants' using their own children to produce child pornography (*See United States v. Wright,* 373 F.3d 935 (9th Cir. 2004), and for manslaughter by a drunk big rig truck driver (*See United States v. Semsak,* 336 F.3d 1123 (9th Cir. 2003).

Given the facts of this case, an upward variance or departure is warranted based on any one of the guideline sections discussed above. Additionally, the Court should take into account all of the factors set forth in 18 U.S.C. § 3553(a) when making a sentencing determination. The United States also has an obligation to consider the safety of the community and deterrence of similar conduct by this defendant. This case is shocking and disturbing on many levels – the extent of the Morgan's planning and preparation, the fact that he almost got away with the crime, and that he has never expressed any remorse or regret. In fact, he stated at least twice during the trial that he would engage in the same conduct again if given the chance, which means that JJP will only be safe as long as Morgan remains in prison.

## CONCLUSION

WHEREFORE, after consideration of the included facts and arguments, the United States respectfully requests that this Court apply the eight-level upward departure and impose a sentence of life.

Dated this <u>6th</u> day of March, 2018.

Respectfully Submitted,

DAYLE ELIESON
United States Attorney


*/s/ Susan Cushman*
SUSAN CUSHMAN
Assistant United States Attorney

**CERTIFICATE OF ELECTRONIC SERVICE**

This is to certify that the undersigned has served counsel for Defendant with the foregoing by means of electronic filing.

Dated this 6th day of March, 2018

                    */s/ Susan Cushman*
                    SUSAN CUSHMAN
                    Assistant United States Attorney