2:17-cr-00064-KJD-GWF - December 19, 2017

1            IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF NEVADA

3    UNITED STATES OF AMERICA,      )
                                    ) Case No. 2:17-cr-00064-KJD-GWF
4              Plaintiff,           )
                                    ) Las Vegas, Nevada
5    vs.                            ) December 19, 2017
                                    ) 1:50 p.m.
6    JACK WILLIAM MORGAN,           ) Courtroom 4A
                                    )
7                                   ) Jury Trial, Volume 2
               Defendant.           ) Closings and Verdict
8    _____)  *C E R T I F I E D   C O P Y*

9

10       REPORTER'S **PARTIAL** TRANSCRIPT OF JURY TRIAL, VOLUME 2
                 BEFORE THE HONORABLE KENT J. DAWSON
11               UNITED STATES DISTRICT COURT JUDGE

12

13    APPEARANCES:

14    For the Government:    *SUSAN CUSHMAN, AUSA*
                            *KATHRYN NEWMAN, AUSA*
15                           United States Attorney's Office

16    For the Defendant:    *JACK WILLIAM MORGAN, Pro Se*
                      -AND-
17                          *DUSTIN MARCELLO, ESQ., Advisory Counsel*
                           Pitaro & Fumo, Chtd.

18

19

20

21    Court Reporter:        Amber M. McClane, CCR 914
                            United States District Court
22                          333 Las Vegas Boulevard South, Room 1334
                            Las Vegas, Nevada 89101
23                          AM@nvd.uscourts.gov

24    Proceedings reported by machine shorthand.  Transcript
      produced by computer-aided transcription.
25

2:17-cr-00064-KJD-GWF - December 19, 2017

1                          *I N D E X*

2

3    *Government's Closing Argument. . . . . . . . .Page 3*

4    *Defense's Closing Argument . . . . . . . . . .Page 11*

5    *Government's Rebuttal Closing Argument . . . .Page 18*

6

7                        *  *  *  *  *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        LAS VEGAS, NEVADA; TUESDAY, DECEMBER 19, 2017; 1:50 P.M.

 2                           --o0o---

 3                    P R O C E E D I N G S

 4       (In the presence of the jury.)

 5            THE COURT:  Closing argument or statements.  The

 6   Government will go first.  The defendant will have an

 7   opportunity to make a closing statement, if he wishes to do

 8   so, and the Government will have the opportunity to sum up.

 9            MS. CUSHMAN:  Can you hear me?

10            THE COURT:  Yes.

11            MS. CUSHMAN:  Thank you.

12                GOVERNMENT'S CLOSING ARGUMENT

13            MS. CUSHMAN:  May it please the Court.  Good

14   afternoon, ladies and gentlemen of the jury.

15            This is a horrific crime, and it's every woman's

16   worst nightmare.  Jane broke up with that man, the defendant,

17   and was moving on with her life, but the defendant had not

18   moved on with his.  Instead, every day for one year and three

19   months Mr. Morgan plotted, planned, and prepared with Brown to

20   kidnap Jane because he told Jane she belonged to him.  He

21   considered Jane his property.

22            So what did he do?  He found an area in a steep

23   hillside, he moved -- went to Northern New Mexico where he

24   found an area on a steep hillside that nobody could see.

25   Exhibit 9A.  9A again.  9A.  Nobody could see this.  You
```

1    couldn't see it from the road.  You would have no idea it was

2    there.

3            9B, please.  Again, you would never know it was

4    there, and it was only when Officer Whittaker told you that it

5    was up here, one entrance was there in that area (indicating),

6    and the other entrance was down there where I've circled.

7            Jane told you the defendant told her in the van that

8    he spent six hours -- six hours a day every day for one year

9    and three months digging that cave, and in the cave he had

10   carried up and put in the cave an eye bolt and a chain and

11   there were three rooms.  Exhibit 9E, please.  Because once he

12   put her in that cave, she wasn't ever leaving.  The cave was

13   stocked with food, it was stocked with ammunition -- 9G -- and

14   he had stocked it with his own rifle.

15           Once Morgan and Brown had finished planning and

16   preparing what they had to do in New Mexico, which included

17   testing the chain and testing the eye bolt in the cave, they

18   drove to Las Vegas in his white van.  And when they got to

19   Las Vegas, at some point Morgan called Jane to ask her to meet

20   him for coffee.  She agreed to meet him for coffee at a coffee

21   shop that was far from her house.  And you could see that she

22   was afraid of him.  You could see when she came up and

23   testified, her body language on the stand, she is still

24   terrified of this man.  And the evidence shows with good

25   reason.

1        They talked for a while at the coffee shop, and they

2   eventually parted ways.  Meanwhile, Brown hid in the back of

3   the van, and you learned, in the van, Brown told her he hid in

4   the back of the van so that he could get a look at what Jane

5   looked like.  And then, later, Brown went door to door in

6   Jane's apartment complex to find the apartment that Brown --

7   that Jane lived in.  And then Brown communicated that

8   information to the defendant so that he could go to her

9   apartment and forcibly take her from her apartment against her

10  will.

11       The van -- the backseat of the van had been -- there

12  was no seat in it.  It had been removed.  Exhibit 6H, please.

13  And there had been eye bolts installed in the back of the van,

14  and those eye bolts were used to hold Jane down with chains.

15  Exhibit 6I.  You can take these chains back into the jury

16  room.  These chains are heavy, and these are the chains that

17  the defendant wrapped around her neck, wrapped around her

18  legs, wrapped around her body, and chained her down to the

19  floor of that van.  He used duct tape to tape her mouth shut.

20  Here's the empty roll of duct tape.  That's Government's

21  Exhibit 8D.  And to use handcuffs.

22       To get her into that van, he broke into her

23  apartment.  He tried to subdue her with a stun gun that didn't

24  work.  She kicked.  She screamed.  She kicked a hole in the

25  wall of her apartment.  Fortunately, her neighbor, Mr. Li,

```
 1    heard the commotion.  He saw the defendant carrying her
 2    downstairs.  Her face was purple.  She couldn't breathe.  She
 3    had visible marks in -- around her throat and her eyes.  The
 4    blood vessels in her eyes were ruptured from having been
 5    choked.  The defendant had stuck a sock in her mouth to try to
 6    keep her from screaming.
 7            I'd like you to take a look at Exhibit 7D and E.  7D
 8    shows the marks around her throat from being choked.  7E,
 9    please.  7E shows the ruptured blood vessels in her eyes.  She
10    told you she got those -- Jane told you she got those from
11    being choked by the defendant.
12            Fortunately, Mr. Li heard this commotion and he
13    followed her downstairs, and he was able to get a partial view
14    of the plate and the description of the van.  A white van with
15    a Texas plate.  And he had called 911, and you heard the fear
16    in his voice when he called 911.  You have that recording.
17    It's in evidence.
18            And based on interviewing Mr. Li and some of the
19    items that were left behind in Jane's apartment, like her
20    wallet, her cell phone with her driver's license, they were
21    able to put together enough information to put together a
22    BOLO, a Be on the Lookout for.  And the authorities in New
23    Mexico got ahold of that BOLO, and just by luck and
24    coincidence Officer Santana heard that BOLO and decided to go
25    set up at the road that heads north through the town of
```

 1   Española, New Mexico.  And he saw the van, the van that that

 2   man was driving with Jane chained up in the back of it.  He

 3   followed the van and he pulled it over and -- with the help of

 4   other officers, and Jane was inside chained up.

 5          Whatever Morgan was going to do to Jane in the cave

 6   did not happen because Morgan and Brown were caught with Jane

 7   in the back of the van in chains.  They were just 10 minutes

 8   away from the cave outside of Española.

 9          So you might be asking yourself why Morgan and Brown

10   decided to do this, and Judge Dawson has just instructed you

11   on the evidence.  And you will notice in the instructions

12   there's nothing about the defendant's motive for doing this.

13   Motive is not a defense, and it's certainly not an element

14   that the Government needs to prove in order for you to return

15   a guilty verdict.

16          I'm going to talk to you now about the elements that

17   you do need to prove in order to return a guilty verdict.  And

18   so here you have -- we're charging two crimes.  There's

19   conspiracy to commit kidnapping and then the kidnapping.

20          So you see -- you've got the instructions and you'll

21   be able to take those back into the jury room with you, but

22   basically a conspiracy is a fancy agreement or sort of a fancy

23   term for a partnership or an agreement to commit a crime.

24   And, in this case, there was an agreement -- the evidence

25   shows there was an agreement between Brown and Morgan to

2:17-cr-00064-KJD-GWF - December 19, 2017

```
 1    kidnap Jane.  And you know this because of the steps that

 2    Brown took -- Brown took and Morgan took to -- to further this

 3    kidnapping.  Those steps are called overt acts.

 4          So there are a number of overt acts or steps that

 5    you've heard about during the course of this trial and that

 6    the Government has proved.  The first one being digging the

 7    cave.  The second one being Brown going from door to door in

 8    the apartment complex to find out where Jane is.  The third

 9    one being -- the third one being Morgan coming into her

10    apartment, forcibly taking her from the apartment, and putting

11    her in the van.  She's chained in the van and driven to

12    New Mexico.  And there are other overt acts that you can find

13    as well.  You can go back in there and discuss it amongst

14    yourselves, but those are examples of some of the overt acts

15    that took place to further the conspiracy to commit the crime

16    of kidnapping.

17          Kidnapping, which is Count 2 of the indictment, that

18    also has its own elements which the Government needs to prove

19    beyond a reasonable doubt as well, and the first being is that

20    the defendant kidnapped Jane or took her from her apartment.

21    And the other element is that the defendant held Jane for

22    other benefit.  And, in this case, the other benefit --

23    there's an instruction that talks about that.  Instruction 14.

24    The other benefit is some benefit that the defendant derives

25    himself.  It doesn't need to be a monetary benefit or a
```

 1    reward, but it's some personal satisfaction or benefit to the

 2    defendant himself.  In this case, he considered Jane -- he

 3    told us he considered Jane his property, and he was taking

 4    back his property or Jane.  That is the benefit to this

 5    defendant.

 6            The third element of kidnapping is that he was --

 7    that she was transported across state lines, and we know that

 8    because he grabbed her in Nevada, he traveled from Nevada,

 9    across Nevada, across Arizona, and into New Mexico.  So that's

10    three state lines that he brought her across when he kidnapped

11    her.

12            Morgan and Brown drove for 12 hours with Jane in the

13    back of the van.  Government's Exhibit 10I and J, please.  Her

14    arms and her legs were handcuffed.  Those are the marks from

15    the handcuffs.  Those are the marks from the handcuffs.  She

16    told you, because the handcuffs were so tight around her arms

17    and legs, they caused marks.  Those are the marks on her legs

18    from the defendant dragging her down the stairs.

19            She sat in that van for 12 hours not knowing what

20    would happen or where she was going until 10 minutes from that

21    location the Española Police Department and

22    New Mexico Police Department found her and stopped the van.

23        *(Video played.)*

24        **MS. CUSHMAN:**  Okay.  Thank you.

25            This is -- this is a person -- this is a person who

2:17-cr-00064-KJD-GWF - December 19, 2017

1   was scared out of her life because, as she told you before,

2   she was either going to be raped or killed in that cave, and

3   but for the New Mexico State Police and

4   Española Police Department stopping this van, that probably

5   would have happened.

6           Ladies and gentlemen, thank you for the close

7   attention you've paid -- paid during the course of this trial.

8   I'm going to go back and -- I'm going to ask you, when you go

9   back to that jury room to deliberate, you return the only

10  verdict that's supported by the evidence, the only verdict

11  that the Government's evidence has proved beyond a reasonable

12  doubt, and that's guilty as to conspiracy to commit kidnapping

13  and guilty as to kidnapping.  Thank you.

14          **THE COURT:**  Mr. Morgan, do you wish to make a closing

15  statement or argument?

16          **THE DEFENDANT:**  Yes.  Do I get a fancy lapel mic?

17          **THE COURT:**  Are you asking for a lapel mic?

18          **THE DEFENDANT:**  Do I get one?

19          **THE COURT:**  If we have one available.

20          **THE DEFENDANT:**  That would be cool.

21          **COURTROOM ADMINISTRATOR:**  She can pass it on to him,

22  Your Honor.

23          **THE COURT:**  Okay.

24          **THE DEFENDANT:**  Testing.

25  ///

1                    **DEFENSE'S CLOSING ARGUMENT**

2          **THE DEFENDANT:**  Well, thank y'all for being patient.

3   I've know it's the Christmas season.  You want to get home.  I

4   want to get back to Christmas.  I love Christmas.

5          Basically everything, more or less -- the time line's

6   a little off, but why quibble about minutiae?  Most of what

7   you see did happen.  We disagree about how they happened.  I

8   believe that the evidence shows that I was not violent towards

9   Jane, the pictures and all that, but that she was violent

10  towards me.  And I believe that the witness testimony

11  corroborates that.  They say that she was the one who was

12  fighting.  But besides that, this is just something that me

13  and the prosecution disagree about.  The truth will come out

14  eventually.

15         It says that there is nothing hidden that will not be

16  made manifest, and there is nothing made secret that shall not

17  be known abroad, "Mark 4:22."  So we don't need to worry that

18  the truth will be hidden forever.  The truth can never be

19  overcome.  It can only be delayed.  Eventually all things will

20  come out, which is why I'm -- I've been kind of cavalier for

21  this whole thing.  And I think the reason for that is that I

22  know that this is not my day of trial.  This is just a trial,

23  and we all go through trials in life.  But there is one trial

24  that we will face after this life is over, and it is on that

25  trial that we must all be accountable.

2:17-cr-00064-KJD-GWF - December 19, 2017

1          Now, when we act, we need to know that nothing can

2   hide what we do.  Everything that we do, everything that we

3   feel is being put on the stand.  It's being held up for trial.

4          So when you're deliberating this, I want you to

5   consider that -- I believe this -- I believe this to be true.

6   And I don't know your faiths or even if you have faith, but I

7   would like this to be true for you also for now and,

8   potentially, for the rest of our lives.  It can't help but

9   make us better people.

10          Now, I believe in compassion from my fellow man, and

11   that's why all this transpired.  They say that motive is not

12   relevant, and I don't know the law.  I'm not a lawyer,

13   obviously.  But I am -- well, not to put myself up there, but

14   I am a righteous man.  I'm not righteous because I've done

15   anything great or because I'm better than anyone else.  No.

16   I'm righteous because I have received righteousness through

17   instruction, through salvation.  My sins have been taken.  I

18   don't need to worry --

19          **MS. CUSHMAN:**  Objection.  This is not relevant to the

20   facts in the trial.

21          **THE COURT:**  You can speak as -- as you did about

22   the -- the -- your belief that you are doing the greater good.

23   It's not really relevant, as the Government points, out

24   because you did it against the consent of the victim.  But I

25   will allow you to --

1          **THE DEFENDANT:**  Is necessity not a defense?

2          **THE COURT:**  You don't have a case for necessity here,

3     sir.

4          **THE DEFENDANT:**  Do I continue?

5          **THE COURT:**  There's no evidence to support necessity

6     here.

7          Carry on.

8          **THE DEFENDANT:**  All right.  So -- so I can just say

9     whatever -- keep going?  All right.

10          So our righteousness is given to us.  It is in the

11     form of integrity or wholeness of being.  Now, since it was a

12     gift to me from high, I feel the need to protect it.  All

13     right?  As we all feel a need to protect the ones that we

14     love, we feel a need to protect ourselves, I feel the need to

15     do what is right not by myself but by the ones who surround

16     me, even if this results in harm to myself.

17          And, shucks, I've been in prison for almost a year,

18     lost just about everything I own, separated from the ones that

19     I care for.  These aren't consequences that I take lightly.

20     But in light of all that I have suffered, I have to ask

21     myself:  Would I do it again?  That's an important question.

22     I have to say yes because I know the reason that I did it.

23          Any one of you, if you had somebody that you cared

24     about -- a child, a cousin, whatever -- falls into a river,

25     that river is raging.  It's rampant; white water.  You jump in

```
1    there after that child without even thinking not taking heed
2    to the fact that you could drown yourself, that you could be
3    knocked unconscious and killed, and you don't even consider
4    those things when you do that because of the love you have for
5    that person.  For me it's no different.  I value Jane's life
6    as more than my own, and I've traded hers for mine.  Was she
7    saved by my actions?  No.  I'm not a savior.  I can't save
8    anyone.  Shucks.  But we are under responsibility to make the
9    world around us a better place, to help those who we have been
10   placed in a position to help.
11          It says withhold not good from those to whom it is
12   due when it is in your power to act.  And to him who knows
13   what he ought to do and does not do it, to him it is sin.  So
14   I found myself being the only person in a position to help
15   Jane, the only person who knew, the only person who had the
16   power to do something.  And I did what I felt like I had to do
17   not only because of her sake but to protect my integrity to my
18   creator, which I will have to justify, as we all will have to
19   justify.
20          Now, there's a concept called aftercare, which I
21   think is important, which helps to explain Jane's emotional
22   state.  Her emotional state on the stand was, you know, pretty
23   traumatized, pretty sad, and I felt that.
24          When me and Jane interact, we enter heightened
25   emotional states.  Well, I don't.  She does.  I'm the rock;
```

 1    she's the feeler.  That's why we work.  When she's in a

 2    heightened state, I protect her.  And this is part of

 3    vulnerability, part of emotional intimacy.  It gets people

 4    closer.

 5           Now, what you saw on the stand, for her and me,

 6    that's not too uncommon.  That's probably just about every

 7    day, every week at least.  But when she enters that state, I'm

 8    the one that she turns to for safety.  I'm the one that she

 9    turns to for protection.  Now, if someone --

10           MS. CUSHMAN:  Objection.  There's no evidence of this

11    whatsoever.  The jury should be told to disregard it.

12           THE COURT:  He's -- he alleged that in his testimony,

13    so I'll allow him to continue.

14           THE DEFENDANT:  Okay.  So when you see her in this

15    state, when she was in this state when she was found, and she

16    was taken away from a protective -- a potentially protective

17    environment, that aftercare, which is what you give someone

18    after a period of distress to normalize them, was prevented

19    from giving -- given to her.  Being was prevented from giving

20    -- you know what I'm saying.  And, as a result, she's stayed

21    in that state for all this time.  I'd like to think that I'm a

22    forgiving man because we have -- we're commanded to forgive.

23    And when I see the actions of our Government in interrupting

24    and I see that the suffering that she feels on her person, I

25    feel that, too.  That is not a result of anything that I have

2:17-cr-00064-KJD-GWF - December 19, 2017

```
 1    done.  It is a result of the -- me being prevented from
 2    bringing her back out of it.  And now she's stuck there, and
 3    that's a terrible place to be.  But even though I'm concerned
 4    about her, as I'm sure all of you are, to you -- like I said,
 5    to you, she's a stranger.  But, to me, I know her well.  To
 6    me, I consider her more important to me than my own life, my
 7    own flesh; like a daughter.  I feel that pain, and I want her
 8    to move on from that.  I want her to be restored.  I knew this
 9    girl.  To me, she was innocent, she was sweet, happy,
10    trusting, secure, all of the things that make life beautiful.
11    And all of these good things have been taken from her.  That's
12    not what I want.  That's not what I have acted to prevent.  I
13    have acted to keep her from all of the distressing emotions
14    that you see and to give her back all those things that she
15    treasures, that I treasured about her.
16            Transforming a soul takes time.  It doesn't happen in
17    an instant.  If any of you have ever been in a hard position
18    in your life, you know you didn't get there right away.  And
19    you know that, when you were in that state, you wanted to get
20    out but you couldn't figure it out because the state that you
21    were in led you to where you were.  In that time we need
22    someone to give us a leg up, whether it's God, whether it's a
23    friend, whether it's a family member.  For her, I was that
24    person, and God put me in that position in her life to be that
25    person.
```

1      Now, I don't know where she's going to go from here.

2  I don't know where we're going to go from here.  But I do have

3  faith that, because I offer God my prayers for her, that he

4  will keep her safe, that he will protect her, that he will

5  restore her even when I cannot.

6      It says in the Scriptures that, if we pray for those

7  who are in danger, the Lord will save them by the

8  righteousness, by the cleanness of our hands.  I invoke that

9  Scripture, which is found in "Jehovah 29 -- 22:29-30," and I

10  believe beyond all evidence to the contrary that the Lord will

11  bring her back to the sweet, innocent little girl that I once

12  knew.  I don't know how, but I have faith.

13      Now, I hope that all of you, when you find someone

14  that you love in such a position as I found Jane, that you

15  would act, yourself, to restore them; that you would not think

16  about your self-preservation, not think about what you could

17  lose, not think about the consequences, but that you would

18  give everything for the right reason, selfless reasons.

19      Now, I know that, if any of you were in a situation,

20  that you would want a hand up, and that's all that I've given

21  Jane.  But, unfortunately, what I have tried to give her has

22  been taken from her and it's been kept from her.

23      That's about all.

24      **THE COURT:**  Thank you.  Government?

25      **THE DEFENDANT:**  Merry Christmas.

2:17-cr-00064-KJD-GWF - December 19, 2017

1          **MS. CUSHMAN:**  Can you hear me?

2          **THE COURT:**  Yes.

3              **GOVERNMENT'S REBUTTAL CLOSING ARGUMENT**

4          **MS. CUSHMAN:**  Ladies and gentlemen, your verdict

5     needs to be based on the evidence.  It needs to be based on

6     the facts that were introduced and admitted into evidence in

7     this case.

8              The greater good of the defendant was talking about,

9     that's not an instruction.  That's not a defense.  You'll have

10    all the instructions the Judge -- that -- there's no such

11    defense as the greater good, and that is not something that

12    you should consider when deliberating in reaching a verdict in

13    this case.

14             The defendant claimed he did this for reasons of

15    compassion or acts of compassion.  Well, where was the

16    compassion when he choked her out?  When he ruptured the blood

17    vessels in her eyes?  When he dragged her down the stairs?

18    When he caused cuts and abrasions to her legs?  When he caught

19    off the circulation in her hands and wrists because she was

20    handcuffed too tight?  Where is that compassion?

21             You need to decide this case based on your common

22    sense, and the defendant's argument or theory that Jane did

23    these things, caused these injuries to herself, hurt herself

24    by fighting back, and that the Government is somehow hurting

25    Jane by -- because it rescued her from the kidnapping is

1    ridiculous, and it makes absolutely no sense.  When you're

2    sworn as jurors, you come in here with common sense.  You

3    don't give up your common sense when you deliberate.  You keep

4    that common sense, and the common sense -- if you work through

5    the evidence and look at the exhibits and discuss it amongst

6    yourselves will prove to you that the defendant is guilty

7    beyond a reasonable doubt of a conspiracy to commit kidnapping

8    and kidnapping.

9           And, again, the defendant has -- during his closing

10   has talked about the Lord saving her and returning her to him.

11   Well, the Lord did save her, and the Lord saved her because

12   the New Mexico State Police and the Española Police Department

13   found her in that van when she was 10 minutes away from that

14   cave.

15          And you need to return a guilty verdict as to both

16   counts to save Jane from that man.  And the truth is, he

17   violently kidnapped Jane, the evidence shows that, and Brown

18   helped him.  And, again, I ask you to return a verdict based

19   on the evidence, and that verdict is guilty.  Thank you.

20          **THE COURT:**  Members of the jury, the case is now

21   submitted to you for deliberation and verdict.  The Court

22   Security Officer will come forward and take the oath.

23          **COURTROOM ADMINISTRATOR:**  If you would, please, raise

24   your right hand.

25          Do you solemnly swear to keep this jury together in

```
 1    some private and convenient place, that you will not permit

 2    any persons to speak or communicate with them, nor do so

 3    yourself unless by order of the Court, or ask them whether

 4    they have agreed upon a verdict, and that you will return them

 5    into the Court when they have agreed upon a verdict, and that

 6    you will return them into court when they have so agreed or

 7    when ordered by the Court, so help you God?

 8              COURT SECURITY OFFICER:  I do.

 9              THE COURT:  The evidence will be brought into the

10    jury room for you to consider.  The two persons who are

11    alternates, 13 and 14, you may go into the jury room to

12    collect whatever items you have there.  I will instruct you

13    that -- for you, the admonition continues, and the reason for

14    that is that if -- if there is a reason we need to exclude one

15    of the 12 jurors who are before you, you may be called to

16    replace them, and then you'll need to -- you'll need to be

17    fresh and not have violated any of the admonitions.  If that

18    happens, the deliberations will start from the beginning.

19              So I will meet you in the hallway and make sure that

20    we have your contact information.  We need to be able to

21    contact you almost immediately if there is an issue with any

22    of the other 12 jurors and also to hand you your juror

23    certificates.

24              COURTROOM ADMINISTRATOR:  All rise.

25         (Jury retires.)
```

2:17-cr-00064-KJD-GWF - December 19, 2017

1          **THE COURT:**  Is there any objection if I meet with the

2     alternates and discuss their contact information and hand them

3     their certificates?

4          **MS. CUSHMAN:**  No, Your Honor.

5          **MR. MARCELLO:**  No, Your Honor.

6          **THE COURT:**  Thank you.

7          *(Recess taken from 2:21 p.m. to 3:06 p.m.)*

8          **COURTROOM ADMINISTRATOR:**  All rise.

9          *(Jury entering.)*

10          **THE COURT:**  Please be seated.  The jury is present

11     with the exception of the alternates.

12          Will the jury foreman please rise?

13          Mr. Foreperson, has the jury reached a verdict?

14          **JURY FOREPERSON:**  Yes, Your Honor, we have.

15          **THE COURT:**  Is the verdict unanimous?

16          **JURY FOREPERSON:**  Yes, sir, it is.

17          **THE COURT:**  Have you filled out the verdict form,

18     signed and dated it?

19          **JURY FOREPERSON:**  Yes, sir, we have.

20          **THE COURT:**  Would you please hand that to the court

21     security officer.

22          Ms. Clerk, will you please read the verdict?

23          **COURTROOM ADMINISTRATOR:**  Yes, Your Honor.

24          "*United States of America versus Jack William Morgan*,

25     Case No. 2:17-CR-0064-KJD-GWF.  Jury verdict: We, the jury,

2:17-cr-00064-KJD-GWF - December 19, 2017

1    in the above-entitled case, upon our oath, do say, Count 1, we

2    find the defendant, Jack William Morgan, guilty of the offense

3    of conspiracy to commit kidnapping as charged in Count 1 of

4    the indictment.

5            "Count 2, we find the defendant, Jack William Morgan,

6    guilty of the offense of kidnapping as charged in Count 2 of

7    the indictment.

8            "Dated this 19th day of December, 2017," signed by

9    the foreperson.

10           **THE COURT:**  Thank you.

11           Does either side wish to have the jury polled?

12           **MS. CUSHMAN:**  No, Your Honor.  Thank you.

13           **THE DEFENDANT:**  Sure.  Why not?

14           **THE COURT:**  Okay.  Ms. Clerk, will you please poll

15    the jury?

16           **COURTROOM ADMINISTRATOR:**  Yes, Your Honor.

17           Juror No. 1, is this your true verdict?

18           **JUROR NO. 1:**  It is.

19           **COURTROOM ADMINISTRATOR:**  Juror No. 2, is this your

20    true verdict?

21           **JUROR NO. 2:**  Yes, it is.

22           **COURTROOM ADMINISTRATOR:**  Juror No. 3, is this your

23    true verdict?

24           **JUROR NO. 3:**  Yes, it is.

25           **COURTROOM ADMINISTRATOR:**  Juror No. 4, is this your

2:17-cr-00064-KJD-GWF - December 19, 2017

1    true verdict?

2          **JUROR NO. 4:**  Yes, it is.

3          **COURTROOM ADMINISTRATOR:**  Juror No. 5, is this your

4    true verdict?

5          **JUROR NO. 5:**  Yes.

6          **COURTROOM ADMINISTRATOR:**  Juror No. 6, is this your

7    true verdict?

8          **JUROR NO. 6:**  Yes, ma'am.

9          **COURTROOM ADMINISTRATOR:**  Juror No. 7, is this your

10   true verdict?

11         **JUROR NO. 7:**  Yes.

12         **COURTROOM ADMINISTRATOR:**  Juror No. 8, is this your

13   true verdict?

14         **JUROR NO. 8:**  Yes, it is.

15         **COURTROOM ADMINISTRATOR:**  Juror No. 9, is this your

16   true verdict?

17         **JUROR NO. 9:**  Yes.

18         **COURTROOM ADMINISTRATOR:**  Juror No. 10, is this your

19   true verdict?

20         **JUROR NO. 10:**  Yes, it is.

21         **COURTROOM ADMINISTRATOR:**  Juror No. 11, is this your

22   true verdict?

23         **JUROR NO. 11:**  Yes, it is.

24         **COURTROOM ADMINISTRATOR:**  Juror No. 12, is this your

25   true verdict?

 1          **JUROR NO. 12:**  Yes.

 2          **COURTROOM ADMINISTRATOR:**  Your Honor, the jury has

 3    been polled.

 4          **THE COURT:**  Thank you.

 5          Now I will discharge the jury.  I will meet you in

 6    the jury room to hand you your juror attendance certificates.

 7    On behalf of the parties and the Court, I want to thank you

 8    for your service in this case, and I will only be just a few

 9    minutes coming in.

10      *(Jury retires.)*

11          **THE COURT:**  Ms. Clerk, will you set a sentencing

12    date?

13          **COURTROOM ADMINISTRATOR:**  Yes, Your Honor.

14          Tuesday, March 20, 2018, at 9:00 a.m.

15          **THE COURT:**  Anything further?

16          **MS. CUSHMAN:**  No.  Thank you, Your Honor.

17          **THE COURT:**  Thank you.

18          **MR. MARCELLO:**  No, Your Honor.

19          **THE DEFENDANT:**  No?  I would like -- yes, I got

20    something.  I thank y'all for this.  This was fun.  Maybe we

21    can do it again some time.

22          I feel like we should not judge by the appearances

23    but instead we should judge righteous judgment.  I don't feel

24    like that but it says it.  "Johnson, 24."  And, in this case,

25    most -- well, actually, all of the people who decided were not

2:17-cr-00064-KJD-GWF - December 19, 2017

1    privy to the full details.  But those of you who are, you

2    knew.  You knew but you continued in your cause even though it

3    says thou shall not commit adultery, thou shall not lie, thou

4    shall not prostitute thy daughter to cause her to be a whore

5    or the land will be filled with wickedness.  These are all

6    truths --

7             **THE COURT:**  Mr. -- Mr. Morgan, I don't need to listen

8    to your lecture on the Bible.  You don't know the Bible very

9    well.  One of the most basic things in the entirety of the

10   Bible is that people are free to choose good or evil without a

11   dictator like you coming along and interfering with those

12   choices.  You had no business doing what you were doing.  And

13   you do not -- for you to cobble together a few scriptures that

14   support your position that you can do just about anything you

15   want with another human being flies in the face of everything

16   that is in the Bible.  So I -- we are adjourned.

17            **THE DEFENDANT:**  Okay.

18      *(Proceedings adjourned at 3:12 p.m.)*

19                     --o0o--

20            COURT REPORTER'S CERTIFICATE
        I, AMBER M. McCLANE, Official Court Reporter, United
21   States District Court, District of Nevada, Las Vegas, Nevada,
     do hereby certify that pursuant to 28 U.S.C.§ 753 the
22   foregoing is a true, complete, and correct transcript of the
     proceedings had in connection with the above-entitled matter.
23   DATED:  6/11/2018

24                   /s/ *Amber M. McClane*
                     AMBER M. McCLANE, CCR NO. 914

25

AMBER M. McCLANE, CCR 914
(702) 384-0429